IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ROBIN W., | : | CIVIL ACTION |
|       Plaintiff | : | |
|     v. | : | |
| | : | |
| FRANK J. BISIGNANO, | : | |
| Commissioner of the Social | : | |
| Security Administration, | : | |
|       Defendant | : | NO. 24-5680 |

**MEMORANDUM**

CAROL SANDRA MOORE WELLS
UNITED STATES MAGISTRATE JUDGE                                January 22, 2026

      Robin W. ("Plaintiff") seeks judicial review, pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3), of the final decision of the Commissioner of the Social Security Administration ("the Commissioner"), denying her claims for disability insurance benefits ("DIB") and supplemental security income ("SSI") benefits under Titles II and XVI of the Social Security Act. Plaintiff has filed a brief in support of her request for review, the Commissioner has responded to it and Plaintiff has filed a reply brief. For the reasons set forth below, Plaintiff's request for review is denied.

**I.    PROCEDURAL HISTORY**[1]

      On June 13, 2022, Plaintiff applied for DIB, and records show that she later applied for SSI on February 7, 2023, alleging that disability commenced April 15, 2021, based on physical and mental impairments. Pl. Br at 1-2; R. 210-16, 217-226. Her DIB and SSI claims were denied initially and on reconsideration, so Plaintiff requested a hearing. R. 17. On October 11, 2023, Plaintiff, represented by counsel, and vocational expert ("the VE") Vanessa Ennis testified before Administrative Law Judge ("the ALJ") Raina Goods during a telephonic hearing. R. 40-69. On

---

[1] The court has reviewed and considered the following documents in analyzing this case: Plaintiff's Brief and Statement of Issues in Support of Request for Review ("Pl. Br."), Defendant's Response to Request for Review by Plaintiff ("Resp."), Plaintiff's Reply Brief ("Reply"), the and the administrative record ("R.").

December 6, 2023, the ALJ, using the sequential evaluation process for disability,[2] issued an unfavorable decision. R. 14-37. The Social Security Administration's Appeals Council denied Plaintiff's request for review on August 26, 2024, making the ALJ's findings the final determination of the Commissioner. Pl. Br. at 2. Plaintiff seeks judicial review and the parties have consented to this court's jurisdiction, pursuant to 28 U.S.C. § 636(c)(1).

## II.     FACTUAL BACKGROUND

A.   <u>Personal History</u>

Plaintiff, born on July 26, 1988, was 32 years old on her alleged disability onset date and 35 years old on the date of the administrative hearing. R. 29. She has a high school diploma, vocational training as a Certified Nurse's Assistant ("CNA"), and a cosmetology degree, though she had no active licenses at the time of her hearing. Pl. Br. at 2. Plaintiff lives with her three children, who were one, three and eight years old at the time of the hearing and receives help to

---

[2] The Social Security Regulations provide the following five-step sequential evaluation for determining whether or not an adult claimant is disabled:

> 1. If claimant is working, doing substantial gainful activity, a finding of not disabled is directed. Otherwise proceed to Step 2. *See* 20 C.F.R. §§ 404.1520(b), 416.920(b).
>
> 2. If claimant is found not to have a severe impairment which significantly limits her physical or mental ability to do basic work activity, a finding of not disabled is directed. Otherwise proceed to Step 3. *See* 20 C.F.R. §§ 404.1520(c), 416.920(c).
>
> 3. If claimant's impairment meets or equals criteria for a listed impairment or impairments in Appendix 1 of Subpart P of Part 404 of 20 C.F.R., a finding of disabled is directed. Otherwise proceed to Step 4. *See* 20 C.F.R. §§ 404.1520(d), 416.920(d).
>
> 4. If claimant retains the residual functional capacity to perform past relevant work, a finding of not disabled is directed. Otherwise proceed to Step 5. *See* 20 C.F.R. §§ 404.1520(f), 416.920(f).
>
> 5. The Commissioner will determine whether, given claimant's residual functional capacity, age, education and past work experience in conjunction with criteria listed in Appendix 2, she is or is not disabled. *See* 20 C.F.R. §§ 404.1520(g), 416.920(g).

care for them from the Department of Human Services ("DHS") and her children's father. R. 23, 46.

B.      Plaintiff's Testimony

At the October 11, 2023, administrative hearing, Plaintiff testified about her limitations. She stated that she can no longer work because of Long COVID, depressive disorder, brain fog, and fatigue. R. 44-55. Plaintiff believes two bouts of COVID-19, caused brain swelling, with resultant weakness, fatigue, social anxiety, and impaired mobility. R. 50-51. She described difficulty lifting and noted that her legs and feet sometimes give out. R. 51. She also reported experiencing chest and head pain, and episodes where her hands and arms "pop[] out," accompanied by pain. R. 52.

Plaintiff reported spending over three hours doing hair in her cosmetology vocational training class—an activity that should have taken only one hour. R. 53. Her daily routine includes going for a walk, attending a vocational training course, and lying in bed. R. 56-57. She takes public transportation to and from the vocational training course two to three days per week, where she typically stands for up to two hours each day. R. 56-57.

C.      Vocational Testimony

The VE characterized Plaintiff's past home health aide job as semiskilled[3] and medium,[4] though Plaintiff performed that position at the very heavy exertional level.[5] R. 62. The ALJ asked the VE to consider a person of Plaintiff's age, education, work experience, who was limited to

---

[3] "Semi-skilled work is work which needs some skills but does not require doing the more complex work duties." 20 C.F.R. §§ 404.1568(b), 416.968(b). It is less complex than skilled work but more complex than unskilled work. *Id.* "A job may be classified as semi-skilled where coordination and dexterity are necessary, as when hands or feet must be moved quickly to do repetitive tasks." *Id.*
[4] "Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds." 20 C.F.R. §§ 404.1567(c) 416.967(c).
[5] "Very heavy work involves lifting objects weighing more than 100 pounds at a time with frequent lifting or carrying of objects weighing 50 pounds or more." 20 C.F.R. §§ 404.1567(e), 416.967(e).

light[6] exertion and can never climb ladders, ropes or scaffolds, but can: occasionally crawl, frequently climb ramps and stairs, balance, stoop, kneel and crouch, frequently handle and finger with the left upper extremity, tolerate only occasional concentrated exposure to vibration, fumes, odors, dusts, gases and poor ventilation, tolerate no exposure to unprotected heights or moving mechanical parts, tolerate moderate noise, understand, remember and carry out simple instructions, and frequently interact with the public, coworkers and supervisors and cope with occasional changes in a routine work setting. R. 62-68. Although the posited person could not perform Plaintiff's past work, she could perform three alternative jobs: (1) garment sorter, 90,000 positions in the national economy; (2) garment tagger, 100,000 positions in the national economy; and (3) routing clerk, 100,000 positions in the national economy. R. 65-67. The ALJ next asked the VE to consider the same person if limited to sedentary[7] work. R. 67-68. The VE responded that the second hypothetical person could work as a lens inserter, 100,000 positions in the national economy. R. 63.

### III. THE ALJ's FINDINGS

In her decision, the ALJ issued the following findings:

1. [Plaintiff] meets the insured status requirements of the Social Security Act through December 31, 2024.

2. [Plaintiff] has not engaged in substantial gainful activity since April 15, 2021 (20 CFR 404.1571 *et seq.*, and 416.971, *et seq.*).

3. [Plaintiff] has the following severe impairments: long COVID-19, left wrist De Quervain's tenosynovitis, depressive disorder, posttraumatic stress disorder (PTSD), anxiety, and a mild-moderate cognitive linguistic

---

[6] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." 20 C.F.R. §§ 404.1567(b), 416.967(b).

[7] "Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking or standing is often necessary in carrying out job duties." 20 C.F.R. §§ 404.1567(a), 416.967(a).

4

          impairment (20 CFR 404.1520(c) and 416.920(c)).

4.     [Plaintiff] does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5.     After careful consideration of the entire record, the undersigned finds that the [Plaintiff] has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except the [Plaintiff] can never climb ladders, ropes, or scaffolds; can occasionally crawl; can frequently climb ramps and stairs, balance, stoop, kneel and crouch; can frequently handle and finger with the left upper extremity; can tolerate occasional concentrated exposure to vibration, fumes, odors, dusts, gases and poor ventilation; can have no exposure to unprotected heights or moving mechanical parts; can tolerate a moderate noise level; can understand, remember and carry out simple instructions; can frequently interact with the public, coworkers and supervisors; and can deal with occasional changes in a routine work setting.

6.     [Plaintiff] is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

7.     [Plaintiff] was born on July 26, 1988, and was 32 years old, which is defined as a younger individual age 18-49, on the date the application was filed (20 CFR 404.1563 and 416.963).

8.     [Plaintiff] has at least a high school education (20 CFR 404.1564 and 416.964).

9.     Transferability of jobs skills is not material to the determination of disability because, using the Medical-Vocational Rules as a framework, supports finding that [Plaintiff] is "not disabled," whether or not [she] has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10.     Considering [Plaintiff's] age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that [Plaintiff]

> can perform (20 CFR 404.1569, 404.1569a, 416.969, and 416.969a).
>
> 11. [Plaintiff] has not been under a disability, as defined in the Social Security Act, from April 15, 2021, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

R. 20, 22-23, 29-30.

## IV. DISCUSSION

A. <u>Standard of Review</u>

Judicial review of the Commissioner's final decision is as follows. The Commissioner's findings of fact will not be disturbed if they are supported by substantial evidence. *Poulos v. Comm'r of Soc. Sec.*, 474 F.3d 88, 91 (3d Cir. 2007); *Schaudeck v. Comm'r of Soc. Sec. Admin.*, 181 F.3d 429, 431 (3d Cir. 1999). Substantial evidence is not "a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (internal quotation omitted). While it is more than a mere scintilla of evidence, *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019), it may amount to less than an evidentiary preponderance. *Fargnoli v. Massanari*, 247 F.3d 34, 38 (3d Cir. 2001); *Brown v. Bowen*, 845 F.2d 1211, 1213 (3d Cir. 1988). Overall, this test is deferential to the ALJ, and the court should affirm the ALJ's findings of fact that are supported by substantial evidence, even when the court, acting *de novo,* might have reached a different conclusion. *Monsour Medical Center v. Heckler*, 806 F.2d 1185, 1190-91 (3d Cir. 1986), *cert. denied*, 482 U.S. 905 (1987). Indeed, the court is not permitted to weigh the record evidence itself. *Rutherford v. Barnhart*, 399 F.3d 546, 552 (3d Cir. 2005). By contrast, the Commissioner's legal conclusions are subject to *de novo* review. *Poulos*, 474 F.3d at 91; *Schaudeck*, 181 F.3d at 431.

B. <u>Burden of Proof in Disability Proceedings</u>

To be found "disabled" under the Act, Plaintiff must carry the initial burden of

6

demonstrating that she is unable to engage in "any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A); 20 C.F.R. §§ 404.1505(a), 416.905(a). Plaintiff may establish a disability through: (1) medical evidence meeting one or more of the serious impairments detailed in 20 C.F.R., Part 404, Subpart P, Appendix 1; or (2) proof that the impairment is severe enough that Plaintiff cannot engage in any type of "substantial gainful work which exists in the national economy." *Heckler v. Campbell*, 461 U.S. 458, 460 (1983); 42 U.S.C. § 423(d)(2)(A).

Under the first method, Plaintiff is considered *per se* disabled by meeting one of the "listed" impairments. *Heckler*, 461 U.S. at 460. Under the second method, Plaintiff must initially demonstrate that a medically determinable impairment prevents her from returning to her past employment. *See Brown*, 845 F.2d at 1214. If Plaintiff proves that her impairment results in functional limitations to performing her past relevant work, then the burden of proof shifts to the Commissioner to prove that work does in fact exist in the national economy which Plaintiff can perform given her age, education, work experience and residual functional capacity. *See Hess v. Comm'r Soc. Sec.*, 931 F.3d 198, 201 (3d Cir. 2019); *Poulos,* 474 F.3d at 92.

C.  Review of the Administrative Law Judge's Decision

Applying the sequential evaluation process ("SEP"), the ALJ determined that Plaintiff could not perform her past relevant work but could perform a limited range of light work that exists in the national economy and, hence, was not disabled. R. 20-31. Plaintiff disputes the ALJ's SEP Step 3 and Step 4 determinations. In challenging the Step 3 findings, Plaintiff argues that the ALJ: (1) failed to cite SSA Emergency Message 21032, *Evaluating Cases with Coronavirus Disease 2019 (COVID-19)* ("Long COVID policy" or "the policy"); (2) declined to obtain medical expert

7

("ME") testimony at the hearing; and (3) made "paragraph B" findings that lack substantial evidence.  Pl. Br. at 6-11.  Plaintiff further contends that the ALJ's Step 4 residual functional capacity ("RFC") analysis is not supported by substantial evidence because the ALJ (4) failed to accommodate Plaintiff's limitations in concentration, persistence, and pace; (5) improperly rejected the opinions of treating and examining sources; and (6) discredited Plaintiff's subjective symptom reports for invalid reasons.  Pl. Br. at 11-22.

### The ALJ's Step 3 Analysis

The SSA's Long COVID policy, effective from August 9, 2022, through March 28, 2024, provided information on the long-term health effects of COVID-19 and guidance on how to evaluate disability claims that include a claim or diagnosis of COVID-19 or Long COVID.[8]  The policy establishes that COVID-19 is a medically determinable impairment ("MDI") when there is evidence of:  (1) a positive viral test for SARS-CoV-2, (2) a diagnostic test with findings consistent with COVID-19, or (3) a diagnosis of COVID-19 with symptoms consistent with the virus.  EM 21032(C)(1).  It identifies common Long COVID symptoms such as chest and throat pain, shortness of breath, fatigue, anxiety, depression, headaches, brain fog, and joint and muscle pain. EM 21032(C)(5).  The policy also instructs ALJs to consider whether COVID-19 or Long COVID meets or medically equals a listing by following existing policies and regulations ("default rules"). EM 21032(C)(6) (citing the Program Operations Manual System ("POMS") guidance for medical equivalence).  Further, the policy directs ALJs to follow SSA's default rules during all other parts of the sequential analysis.  *See* EM 21032.  The undersigned finds that Plaintiff's arguments

---

[8]  *Social Security Archived Emergency Message*, EM-21032 REV, https://secure.ssa.gov/apps10/referencearchive.nsf/links/08092022072836AMREV (last visited Oct. 31, 2025) ("EM 21032"); *Social Security Emergency Message*, EM-21032 REV 2, https://secure.ssa.gov/apps10/reference.nsf/links/03282024111904AM (last visited Oct. 31, 2025) ("EM 21032 REV 2").

8

concerning the ALJ's Step 3 determination are unsupported by either the Long COVID policy or existing SSA regulations.

1. The Long COVID Policy does not require an ALJ to cite it.

Plaintiff initially argues that the ALJ erred by failing to cite or mention the Long COVID policy, asserting that this omission demonstrates the ALJ's refusal to follow the policy and deprived Plaintiff of the benefit of the required medical equivalence analysis. Pl. Br. at 7-9. However, the ALJ is not required to use any "magic words" or particular language when evaluating the record evidence. *See Diaz v. Comm'r of Soc. Sec.*, 577 F.2d 500, 504 (3d Cir. 2009) (citing *Jones v. Barnhart*, 364 F.3d 501, 505 (3d Cir. 2004)). Furthermore, the Long COVID policy does not require an ALJ to cite it and, as explained below, the ALJ applied the policy correctly.

2. The ALJ did not err when she declined to solicit ME testimony at the hearing.

Plaintiff next argues that the Long COVID policy required the ALJ to obtain ME testimony for the medical equivalence analysis. This argument seeks to expand the ALJ's requirements beyond the standard SEP Step 3 regulations and is not supported by either the Long COVID policy or SSA policies and regulations, with which the ALJ complied.

Plaintiff correctly notes that the policy directs ALJs to follow the default rules when conducting a medical equivalence analysis. *See* EM 21032(C)(6); Pl. Br. at 7. Consistent with the Step 3 regulations, the ALJ properly analyzed whether Plaintiff's impairments met or equaled a listing and reasonably determined that they did not equal any mental disorder listing. 20 C.F.R. §§ 404.1526(e)(3), 416.926(e)(3); R. 20-22. Determining medical equivalence is the ALJ's responsibility, 20 C.F.R. §§ 404.1526(e)(3), 416.926(e)(3), and the Long COVID policy does not alter this established rule. *See* EM 21032. When discussing why she declined to solicit ME testimony, the ALJ explained that she "reviewed the evidence and [found] there [was] no reason

9

to consider that the claimant's impairments medically equal[ed] a Listing." R. 17. The ALJ further explained that she "did not find that a medical expert [was] necessary in order to resolve an inconsistency in the evidence or to clarify any of the issues listed in HALLEX I-2-5-34(A)(2)." R. 17. This is all that was required under existing SSA policy and regulations. SSR 17-2p, 2017 WL 3928306, at *4.

Plaintiff's assertion that "[i]t is impossible to know if" the ALJ assessed whether her impairments medically equaled a listing is false. Pl. Br. at 8. The ALJ explicitly conducted a medical equivalence analysis for Listings 12.02, 12.04, 12.06, and 12.15, and determined that Plaintiff's Long COVID symptoms were not medically equivalent to those listed impairments. R. 21-22.

   3. <u>Substantial evidence supports the ALJ's "paragraph B" determinations.</u>

Plaintiff next argues that the ALJ erred in determining that her impairments—particularly brain fog, fatigue, and memory deficits—did not satisfy the "paragraph B" criteria necessary to meet or equal Listing 12.02. Pl. Br. at 10. This argument also fails.

The Long COVID policy identifies brain fog and fatigue as two of several common symptoms of the virus. EM 21032 (C)(5). However, it does not suggest that the mere presence of such symptoms automatically results in marked or extreme limitations. To the contrary, it expressly directs ALJs to "follow existing policy for evaluating symptoms related to COVID-19," including assessing whether Plaintiff's Long COVID meets or medically equals a listed impairment. EM 21032 (B)(5)-(6). The ALJ did exactly that.

Under standard SSA regulations, an ALJ may find medical equivalence if, after identifying the most analogous listing(s), Plaintiff's impairment(s) are "at least of equal medical significance to the listed impairment." 20 C.F.R. §§ 404.1526(b), 416.926(b). Plaintiff requested that the ALJ consider medical equivalence for Listing 12.02 for neurocognitive disorders, R. 35, and the ALJ,

10

in fact, analyzed Listings 12.02 (neurocognitive disorders), 12.04 (depressive, bipolar, and related disorders), 12.06 (anxiety and obsessive-compulsive disorders), and 12.15 (trauma and stressor-related disorders). R. 21, 45.

These relevant listings all require satisfaction of the "paragraph A" criteria and either the "paragraph B" or "paragraph C" criteria. 20 CFR 404, Subpart P, Appendix 1 § 12.00(A)(2)(b) ("Appendix 1 § 12.00(A)(2)(b)"). The "paragraph B" criteria are the same across all four listings and are met by demonstrating either an *extreme* limitation in one, or *marked* limitations in two, of the following areas of mental functioning: (1) understanding, remembering, or applying information; (2) interacting with others; (3) concentrating, persisting, or maintaining pace; and (4) adapting or managing oneself. Appendix 1 § 12.00(E)(1)-(4). An extreme limitation means an inability to function independently, appropriately, or effectively on a sustained basis, while a marked limitation seriously limits that ability. Appendix 1 § 12.00(F)(2)(d)-(e). Plaintiff challenges the ALJ's determinations for the first and third functional areas.

The ALJ determined that Plaintiff had *mild* limitations in understanding, remembering, or applying information, and *moderate* limitations in concentrating, persisting, or maintaining pace. R. 21-22. In finding mild limitations in understanding, remembering, or applying information, the ALJ considered mental status examinations from SSA consultive examiner Dr. Avi Nires which reflected intact memory and average intellectual functioning. R. 21-22 (citing Exhibits 4F, 6F, and 9F). The ALJ also noted that Plaintiff was attending cosmetology school, reported being good at following spoken and written instructions, and exhibited good insight and judgment. R. 21.

In assessing concentration, persistence, and pace, the ALJ, again, credited the opinion of Dr. Nires, who noted that Plaintiff could count to thirty by threes and accurately perform addition, subtraction, and multiplication. R. 22. Plaintiff's attention and concentration were *mildly* impaired

11

during the examination with Dr. Nires. R. 22. The ALJ also acknowledged record evidence discussing Plaintiff's panic attacks, intrusive thoughts, brain fog, and difficulty dividing correctly and counting backwards from 100. R. 22. "State agent opinions merit significant consideration…." *Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 361 (3d Cir. 2011); *see also* SSR 17-2p, 2017 WL 3928306, at *3 (stating that federal and state agency medical and psychological consultants "are highly qualified medical sources who are also experts in the evaluation of medical issues in disability claims under the Act.)

The ALJ provided more than a scintilla of evidence to support her "paragraph B" determinations. Further, Plaintiff has not shown how Dr. Nires's findings are insufficient to support the conclusion that her concentration is only fairly or moderately limited, particularly given her acknowledgment that her brain fog symptoms present inconsistently. Pl. Br. at 10. ("brain fog is an intermittent symptom").

### The ALJ's Step 4 Analysis

Plaintiff contends that the ALJ's Step 4 residual functional capacity ("RFC") analysis is not supported by substantial evidence because the ALJ: (4) created an RFC assessment limiting her to "simple tasks" without explaining why she can perform the work despite her limitations; (5) improperly rejected the opinions of treating and examining sources; and (6) discredited Plaintiff's subjective symptom reports for invalid reasons. Pl. Br. at 11-22. These arguments lack merit, because the ALJ provided a valid explanation and the RFC assessment, supported by substantial evidence, complies with agency policy.

4. The ALJ's RFC assessment accommodated Plaintiff's concentration, pace, and focus limitations.

Plaintiff argues that the ALJ's RFC finding limiting her to "simple tasks" does not accommodate her moderate limitations in concentrating, persisting, or maintaining pace, or her

ability to remain on task. Pl. Br. at 9-10. This argument fails. The Third Circuit has held that an ALJ must provide a "valid explanation" when assigning a "simple tasks" limitation "after finding that a claimant has moderate difficulties in concentration, persistence, or pace." *Hess*, 931 F.3d at 211.

The ALJ provided a "valid explanation" because she supported her RFC assessment with mental status examinations and reports, Plaintiff's ADLs, and medical opinion evidence which demonstrated that Plaintiff could engage in "simple tasks." R. 27-28. The ALJ cited evidence showing that Plaintiff has average intellectual functioning and was able to "perform simple calculations, was fully oriented, and had intact remote/recent memory" as Plaintiff was able to repeat five digits forward and three digits backward, had good insight and judgment, and could repeat three out of three objects immediately and two out of three after a delay. R. 27. The undersigned finds that the ALJ fulfilled *Hess*'s "valid explanation" requirement.

5. <u>The ALJ did not err when she discredited statements and opinions of Dr. Sayre, NP McGee, and Dr. Dzurinko.</u>

Plaintiff next argues that the ALJ's RFC assessment is not supported by substantial evidence because she rejected purported opinions of Dr. Patrick Sayre and nurse practitioner Abigail McGee ("NP McGee") and improperly weighed the opinions of SSA consultative examiner Dr. Dzuinko. Pl. Br. at 14-19. Specifically, Plaintiff complains that the ALJ improperly rejected Dr. Sayre and NP McGee's statements as "not persuasive as [they] provide[] no functional limitations to be considered for persuasiveness." R. 28. Plaintiff's arguments fail.

When an ALJ considers a medical source's opinions, she must explain how she considered the factors of supportability and consistency.[9] 20 C.F.R §§ 404.1520c(b)(2), 416.920c(b)(2).

---

[9] The other relevant factors for evaluating a medical source's opinions are: the source's relationship to the claimant, the source's specialization, and other factors. 20 C.F.R. §§ 404.1520c(c)(3)-(5), 416.920c(c)(3)-(5).

Supportability refers to the objective medical evidence and supporting explanations the medical source provides for her opinions. 20 C.F.R §§ 404.1520c(c)(1), 416.920(c)(1). Consistency refers to how consistent the source's opinion is with other medical and nonmedical evidence in the record. 20 C.F.R §§ 404.1520c(c)(2), 416.920(c)(2). A medical opinion is "[a] statement from a medical source about what you can still do despite your impairment(s) and whether you have one or more impairment related" functional limitations. 20 C.F.R. §§ 404.1513(a)(3), 416.913(1)(2)(i). An ALJ need not give any medical opinion controlling weight if it is inconsistent with other evidence in the record. 20 C.F.R. §§ 404.1520c(a), 416.920c(a). An ALJ is only required to articulate how she considered "medical opinions and prior administrative medical findings" for persuasive value pursuant to 20 C.F.R. §§ 404.1520c(a)-(c), 416.920c(a)-(c). Further, an ALJ is not bound by the conclusion of any medical source that the claimant is disabled or unable to work, as those decisions are the ALJ's to make. 20 C.F.R. §§ 404.1520b(c), 416.920b(c).

The ALJ did not err when she determined that Dr. Sayre's statements were "not persuasive as [they provided] no functional limitations to be considered for persuasiveness." R. 28. Dr. Sayre did not submit medical opinions. Dr. Sayre's statement reciting Plaintiff's symptoms is not an opinion about what Plaintiff can do despite her impairment, neither is it an opinion regarding Plaintiff's functional limitations. Dr. Sayre's statement that Plaintiff's Long COVID makes her "unable to sustain energy, or concentration, focus to work" is also not a medical opinion. R. 1874. Instead, it is a statement regarding whether Plaintiff can work, and such a statement is "inherently neither valuable nor persuasive" as it concerns an issue reserved for the Commissioner. 20 C.F.R. §§ 404.1520b(c)(3), 416.920b(c)(3).

Furthermore, the ALJ did not err when she determined that NP McGee's letter was "not persuasive as it provides no functional limitations to be considered for persuasiveness." R. 28.

14

NP McGee's statements are not medical opinions either. NP McGee's initial statement described Plaintiff's treatment history. R. 28. NP McGee's statement that her practice instructed Plaintiff to stop working is also not a medical opinion. It is a statement regarding whether Plaintiff can work, and such a statement is "inherently neither valuable nor persuasive" as it concerns an issue reserved for the Commissioner. 20 C.F.R. §§ 404.1520b(c)(3), 416.920b(c)(3).

Although Plaintiff characterizes her argument concerning Dr. Dzurinko as a legal argument—that the ALJ failed to apply the supportability and consistency factors when evaluating Dr. Dzurinko's opinion that she needs to lie down for 55% of the day—she is actually advancing a substantial-evidence argument. Pl. Br. at 17-18 (asserting that "the ALJ's rationale for disregarding Dr. Dzurinko's opinion is not grounded in the factors laid out in SSA regulations but in broad nonsensical conclusions that to be disabled one must be in a constant state of crisis," while ultimately disagreeing with the ALJ's supportability and consistency analyses). This argument lacks merit.

The ALJ explained that Dr. Dzurinko merely adopted Plaintiff's subjective report of lying down for 55% of the day, which is otherwise inconsistent with the rest of the record and Plaintiff's ADLs. R. 27. The ALJ listed Plaintiff's ADLs, including caring for three children, attending to her personal needs, cooking, doing laundry, shopping, managing money, and taking public transportation independently. R. 27. These explanations are proper under the governing regulations. *See* 20 C.F.R. §§ 404.1520c, 416.920c. Although the medical evidence that Plaintiff cites may show that she requires breaks when working, it does not support the conclusion that she needs to lie down for more than half of the day. Pl. Br. at 19. Indeed, Plaintiff has did not cite any part of the record that supports that conclusion.

15

6. The ALJ properly considered Plaintiff's symptoms.

Finally, Plaintiff argues that the ALJ's RFC finding limiting her to unskilled light work is not supported by substantial evidence. Specifically, she argues that the ALJ: (1) failed to credit her Long COVID symptoms, because the ALJ noted that her behavioral health therapy focused on coping skills and PTSD; (2) "cherry-pick[ed]" unremarkable mental-status examinations over those with abnormal findings; and (3) gave undue weight to her ADLs. Pl. Br. at 19-22. These arguments fail.

The governing regulations require an ALJ to evaluate all symptoms to the extent they "can reasonably be accepted as consistent with the objective medical evidence and other evidence." 20 C.F.R. §§ 404.1529(a), 416.929(a). An ALJ may consider how medical and nonmedical evidence relate to a claimant's ADLs and ability to work. 20 C.F.R. §§ 404.1529(c), 416.929(c). An ALJ must assess the totality of the medical record, including signs, laboratory findings, ADLs, and the claimant's own statements. 20 C.F.R. §§ 404.1529(a), (c)(3), 416.929(a), (c)(3). Although an ALJ may not "cherry-pick" favorable evidence, *Edinger v. Saul*, 432 F. Supp. 3d 516, 529 (E.D. Pa. 2020), she is not required to discuss every piece of evidence. *Fargnoli*, 247 F.3d at 38. The ALJ has the discretion to weigh any conflicting evidence in the case record and make a determination. 20 C.F.R. §§ 1520b(b)(1), 416.920b(b)(1).

Plaintiff claims that the ALJ invalidly disregarded and failed to appropriately consider her symptom of brain fog in the RFC assessment, because the ALJ noted that Plaintiff's therapy focused on PTSD. Pl. Br. at 19-20. This argument fails on its face. The ALJ found that "the objective evidence and [Plaintiff's mental-health] treatment history are not entirely consistent with her allegations of the severity of her mental limitations," particularly her claims of more-than-mild limitations in understanding, focus, and concentration. R. 26. Indeed, the ALJ noted that Plaintiff

16

received therapy for anxiety, PTSD, and stress as an overwhelmed single parent. She also explained that Plaintiff routinely had unremarkable mental-status examinations; and reported ADLs consistent with an ability to perform unskilled work. R. 26 (citing Exhibits 3F, 4F, 6F, 9F).

Plaintiff next argues that the ALJ cherry picked mental-status examinations. Pl. Br. at 21. This argument also fails. The ALJ stated that Plaintiff "routinely had unremarkable mental status exams," indicating she considered the full set of results and found normal findings predominated. R. 26. Plaintiff herself acknowledges that her mental status examinations contained both normal and abnormal findings. Pl. Br. at 20. The ALJ did not cherry pick, she analyzed the record as a whole and credited Plaintiff's normal mental status examinations over the abnormal ones because, according to the ALJ, those results were more consistent with the rest of the record. R. 26.

Plaintiff further argues that the ALJ erred by relying on her largely independent performance of ADLs as evidence that she can perform work available in the national economy at the light exertional level. She contends that the ALJ should have given greater weight to her reliance on assistance to perform ADLs. Pl. Br. at 20-22. The ALJ summarized Plaintiff's evidence that she is a single mother who, with assistance, cares for her children; attends cosmetology school twice a week; and is able to cook, clean, do laundry, shop, and attend to personal needs. R. 26. Elsewhere in the RFC assessment, the ALJ also weighed evidence from Plaintiff's hearing testimony and medical evidence showing that Plaintiff homeschooled her children during the relevant period and attended therapy to manage responsibilities of being a single parent. R. 25. This explanation supports the ALJ's RFC assessment.

Plaintiff's argument that her ability to be mostly independent in her ADLs "should not be construed as evidence she can work," Pl. Br. at 21, is incorrect. The Commissioner considers subjective and objective evidence of an individual's activities of daily living as relevant to their

17

ability to perform work in the national economy. 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3).

Finally, Plaintiff's assertion that "far more than minimal evidence" supports her allegations of physical limitations in sitting, standing, and walking misstates the applicable standard. Pl. Br. at 22. The question is not whether evidence exists that could support Plaintiff's position, but whether substantial evidence supports the ALJ's conclusions. *Amanda Lynn E. v. O'Malley*, No. 23-3789, 2024 WL 3511409, at *8 (E.D. Pa. July 23, 2024). It does. The ALJ noted that Plaintiff testified that she takes walks as advised by her physical therapist, uses public transportation independently, cares for three young children (with assistance), and received treatment for her wrist disorder. R. 26. The ALJ also cited Plaintiff's ADLs—caring for three children, cooking, cleaning, doing laundry, shopping, and attending to personal needs. R. 26. This constitutes more than a scintilla of evidence supporting the ALJ's finding that Plaintiff can lift and carry at the light exertional level.

Accordingly, an implementing order and judgment will follow.